# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

DARRELL I. BOLDEN,           )

            )

        Petitioner,            )

            )

    v.                      )        No. 4:19-CV-126 RLW

            )

DAVID VANDERGRIFF,[1]       )

            )

        Respondent.        )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Darrell I. Bolden's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  (ECF No. 1.)  Petitioner is incarcerated at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC").  For the following reasons, the Court will grant the Petition for a writ of habeas corpus on the claim that Petitioner was unconstitutionally denied the right to a <u>Faretta</u> hearing following his unequivocal requests to represent himself, and deny it in all other respects.[2]

### Procedural History

Petitioner Darrell I. Bolden was charged by five separate indictments in St. Louis County, Missouri.  The five indictments were consolidated into one case in November 2013 over Petitioner's objections.  The indictments were tried together in February 2014 under case number

---

[1]David Vandergriff is the current Warden of the Eastern Reception, Diagnostic and Correctional Center where Petitioner is incarcerated.  Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody."  Therefore, David Vandergriff's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

[2]<u>Faretta v. California</u>, 422 U.S. 806, 807 (1975).

13SL-CR02123 (21st Jud. Cir., State of Mo.).  Petitioner faced eleven felony counts as a persistent felony offender.

On February 6, 2014, a jury convicted Petitioner of three counts of first-degree robbery, one count of attempted first-degree robbery, and three counts of armed criminal action.  State v. Bolden, No. 13SL-CR02123-01 (21st Jud. Cir., State of Mo.).  On March 19, 2014, the trial court sentenced Petitioner to life imprisonment on each of the first-degree robbery counts, fifteen years' imprisonment for the attempted first-degree robbery, and twenty-five years' imprisonment for each armed criminal action count.  Petitioner's sentences are concurrent, except for one count of armed criminal action that is consecutive, so his sentence is for life imprisonment plus twenty-five years.

Petitioner appealed his conviction to the Missouri Court of Appeals, which affirmed on May 5, 2015.  State v. Bolden, No. ED 101297, 489 S.W.3d 821 (Mo. Ct. App. 2014) (per curiam) (unpublished mem.) (Resp. Ex. C, ECF No. 14-3).  The Missouri Court of Appeals' mandate was issued on May 28, 2015.  Id.

Petitioner filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on June 1, 2015 (Resp. Ex. J, ECF No. 14-10 at 8-24).  Appointed counsel filed an amended motion for post-conviction relief under Rule 29.15 on September 28, 2015.  (ECF No. 14-10 at 31-49).  The motion court held an evidentiary hearing on November 2, 2016, at which Petitioner and his trial counsel testified.  The motion court denied the motion by written findings of fact and conclusions of law on November 18, 2016.  Bolden v. State, No. 15SL-CC02092 (21st Jud. Cir., State of Mo.) (ECF No. 14-10 at 51-57).  Petitioner filed a notice of appeal on March 22, 2017, and the Missouri Court of Appeals affirmed the denial of post-conviction relief on March 20, 2018.  Bolden v. State, No. ED105327, 541 S.W.3d 715 (Mo. Ct. App. 2018) (per curiam)

(unpublished mem.); (Resp. Ex. H, ECF No. 14-8 at 1-9).  The court of appeals' mandate was issued on April 12, 2018 (Resp. Ex. I, ECF No. 14-9).

Petitioner filed his application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 28, 2019.

## Grounds Raised

The Petition alleges eight grounds for relief:

(1) The trial court erred when it refused to grant Bolden's request to represent himself at trial;

(2)  The trial court erred when it refused to dismiss Bolden's cases based on a violation of his right to a speedy trial;

(3) Trial counsel was ineffective for failing to present testimony from Bolden concerning threats and promises made to him by an FBI Agent, at a hearing on Bolden's motion to suppress his statements to police;

(4) Trial counsel was ineffective for failing to call an FBI DNA Analyst as a witness to testify concerning DNA taken from a stocking cap found at the scene of one robbery;

(5) Trial counsel was ineffective for failing to hire a DNA expert to challenge the State's presentation of DNA evidence from the stocking cap;

(6) Trial counsel was ineffective for failing to establish that Bolden was indigent and to request allocated funds to retain a DNA expert under § 600.086, Missouri Revised Statutes;

(7) Trial counsel was ineffective for failing to investigate, subpoena, and call Richelle Boyd and Michelle Williams as alibi witnesses; and

(8) The State failed to disclose material evidence and information regarding an alternate suspect.

Respondent filed a Response in opposition to the Petition with accompanying exhibits on May 17, 2019.  (ECF No. 14.)  Petitioner filed a letter to the Court (ECF No. 11), a Supplement to his Petition consisting of various exhibits (ECF No. 15), and a Traverse (ECF No. 16).

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently

incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)).  Because the Court determines that Petitioner's claims other than his Sixth Amendment self-representation claim do not warrant habeas relief on their face, it will deny those claims without an evidentiary hearing.  An evidentiary hearing is not necessary to determine that Petitioner is entitled to relief on his self-representation claim.

## Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case as follows, in its memorandum supplementing the order affirming the judgment denying his post-conviction appeal:

### A.  Robberies and Arrest

Viewed in the light most favorable to the verdict, the following evidence was presented at trial.  Between May 7, 2012 and June 4, 2012, five robberies were committed at separate locations in St. Louis County, Richmond Heights, Bridgeton, and Overland.  Witnesses to each robbery testified regarding the incidents and described the assailant as a light-to-medium skinned black male about six feet tall, wearing a ski mask, and carrying a silver handgun.

During the robbery at Mattress Firm, an employee attempted to strike the gun from the assailant's hand.  The men stumbled into the parking lot, and the assailant's ski mask fell off his head.  The assailant ran away.  When police arrived, they seized two ski masks.  The ski masks were sent to the police crime laboratory where they were swabbed for DNA analysis.  The crime lab matched the DNA profile found on the ski masks to Movant's DNA profile in the CODIS system from a prior arrest.

On September 12, 2012, Movant was arrested.  Movant denied involvement in any of the robberies.  However, Movant provided a buccal swab for DNA analysis, which was tested and matched the DNA profile found on the ski masks. On September 13, Movant was questioned by two FBI Agents, regarding a bank robbery committed in Illinois as well as the five robberies in Missouri.  Movant denied committing either of the robberies.  The next day, the FBI Agents again interviewed Movant.  Shortly thereafter, Movant met with the lead detectives investigating the Missouri robberies and confessed to each robbery.  Prior to each

confession, Movant was read his Miranda rights, signed a waiver form, and waived his right to have an attorney present.

Movant was charged with four counts of first-degree robbery, in violation of Section 569.020; one count of attempted first-degree robbery, in violation of Section 564.011; one count of first-degree assault, in violation of 565.050; and five counts of armed criminal action, in violation of Section 571.015.

**B**. **Motion to Suppress Hearing and Trial**

Prior to trial, defense counsel filed motions to suppress Movant's statements, alleging, *inter alia*, the confessions were involuntary because of "threats and promises made to defendant prior to and during the interrogation[.]" At the suppression hearing, the State called the five detectives who took Movant's statements.  Each detective testified that no threats or promises were made to Movant to induce his confessions.  Defense counsel did not call Movant to testify nor did the State call the FBI Agents.  Following the hearing, the trial court denied the motions to suppress.

A jury trial was held.  Ultimately, the jury found Movant guilty of three counts of first-degree robbery, one count of attempted first-degree robbery, and three counts of armed criminal action.[5]  The jury was hung on one count of first-degree robbery and the associated count of armed criminal action, and the State filed a Memorandum of Nolle Prosequi, dismissing those charges.  Movant was sentenced to life imprisonment on the counts of first-degree robbery, twenty-five years' imprisonment on the counts of armed criminal action, and fifteen years' imprisonment on the count of attempted first-degree robbery.  The trial court ordered that all sentences run concurrently, except for one count of armed criminal action, for a total sentence of life imprisonment plus twenty-five years.

---

[5] Following the close of evidence but prior to the jury's deliberation, the State dismissed the charge of first-degree assault and the associated charge of armed criminal action.

(Resp. Ex. H, ECF No. 14-8 at 2-4) (footnotes 2-4 omitted).

## Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard.  Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999).  Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules.  Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted).  In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default."  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)).  If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  See Williams v. Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme

Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the State court's application of the law must be objectively unreasonable. Id. at 409-11; Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." Id.

**Procedurally Defaulted Claims**

A.  Grounds Four, Five, Six, and Seven – Ineffective Assistance of Trial Counsel

In Grounds Four, Five, Six, and Seven, Petitioner asserts claims of ineffective assistance of trial counsel.  None of these grounds were included in the Amended Rule 29.15 Motion to Vacate filed by post-conviction counsel.  To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings.  Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  Id. at 1150.  Where a prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, such as failing to raise claims on appeal, federal habeas review of the claims is barred.  Coleman, 501 U.S. at 750.

As stated above, a petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice.  Id.  To satisfy the "cause" requirement, Petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner.  Id. at 753.  Petitioner raised claims four and five in his Amended Rule 29.15 post-conviction motion but abandoned them prior to the evidentiary hearing.  (ECF No. 14-10 at 34-39, 50).  Petitioner failed to raise claims six and seven in his Amended Rule 29.15 post-conviction motion.  Petitioner acknowledges the default of these grounds, but argues the default should be excused under Martinez v. Ryan, 566 U.S. 1.  Petitioner contends he can show cause and prejudice for the default under Martinez due to post-conviction counsel's failure to advance these claims in his amended Rule 29.15 motion.

In <u>Coleman v. Thompson</u>, the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default.  501 U.S. at 753-75.  In <u>Martinez</u>, the Supreme Court recognized a narrow exception to this rule:  "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective."  566 U.S. at 17.  The Supreme Court also held that a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  <u>Id.</u> at 14.

"As with any ineffective assistance of counsel claim, a petitioner making a <u>Martinez</u> argument to excuse procedural default must show that counsel's performance fell below an objective standard of reasonableness and that the petitioner was prejudiced as a result of that failure."  <u>Tolen v. Norman</u>, No. 4:10-CV-2031 RWS, 2019 WL 3531958, at *2 (E.D. Mo. Aug. 2, 2019) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984)); <u>Hayes v. Bowersox</u>, No. 4:12-CV-2246 JMB, 2016 WL 659081, at *6 (E.D. Mo. Feb. 18, 2016) (Petitioner "must demonstrate that he has a substantial claim of ineffective assistance of counsel for failure to file a motion to suppress evidence.").  Thus, Petitioner must demonstrate both that his trial counsel's performance was objectively unreasonable in a particular regard, and that there is a reasonable probability the outcome of his case would have been different if counsel had taken the action Petitioner complains was omitted.  <u>Armstrong v. Gammon</u>, 195 F.3d 441, 444 (8th Cir. 1999).

*1. Ground Four - Failure to Call FBI Data Analyst to Testify at Trial*

In Ground Four, Petitioner alleges the testimony of FBI DNA Analyst James Corcoran would have established that Petitioner could have been excluded as a contributor to the three

separate DNA profiles developed from a stocking cap dropped by the robber at the scene of the Mattress Firm robbery, and thus there is a reasonable probability that had Corcoran testified, Petitioner would have been acquitted of the Mattress Firm robbery.[3]   (ECF No. 1 at 22.)   This ground was raised in Petitioner's Amended Rule 29.15 motion for post-conviction relief, but was abandoned in the motion court before the evidentiary hearing and was not raised on appeal from the denial of his post-conviction motion.  (ECF No. 14-10 at 34, 50; Resp. Ex. H.)

After the Mattress Firm robbery, police seized two stocking caps as evidence, one black and one green.  (Resp. Ex. H at 2.)  Analysis of the DNA profile found on the black stocking cap was consistent with it being a mixture of at least three individuals, at least one of which was male, and resulted in a hit to Petitioner's DNA profile in the Combined DNA Index System ("CODIS") from a prior arrest.  (Id.)  After he was arrested for the Mattress Firm robbery, Petitioner provided a buccal swab and his DNA profile taken from the swab could not be excluded as a major contributor to the DNA profile on the black stocking cap.  (Id. at 3; Trial Tr. Vol. III, Resp. Ex. N, ECF No. 14-14 at 489.)

Petitioner alleges the FBI DNA Analyst would have testified that as to the D2 locus on the stocking cap, Petitioner's "alleles were 19 and 23, while for the same locus the stocking cap major contributor's alleles were likely 17 and 23[.]"  (ECF No. 1 at 25.)  Petitioner argues that with this evidence, he could have been excluded as a contributor to the three separate DNA profiles developed from the black stocking cap.

Petitioner's trial counsel thoroughly cross-examined the State's DNA Analyst expert witness in an attempt to cast doubt on her testimony, however, and elicited information as to the

---

[3]In the trial transcript, the clothing that was found at Mattress Firm and subsequently DNA profiled was referred to variously as "hats," "ski masks," and "stocking caps."  The Missouri Court of Appeals' opinion affirming the denial of Petitioner's post-conviction Rule 29.15 motion uses the term "ski masks." (Resp. Ex. H.)

alleles at the D2 locus on cross-examination.  (ECF No. 14-14 at 150-183.)  The State's expert, Margaret Walsh, testified that the D2 locus was not searched, and the distinction concerning the alleles at the D2 locus did not mean Petitioner's DNA profile did not match the profile obtained from the stocking cap.  (Id. at 171-72).  The State's expert testified the relevance of this information was that if her crime lab had not entered a sufficient number of alleles into their search of the CODIS database, an older FBI search protocol would not have returned a match for Petitioner's DNA profile.  (Id. at 172.)  The State's expert further testified that when all of the alleles from the State's analysis of the black stocking cap are entered, however, the CODIS database does return a match for Petitioner's DNA profile.  (Id.)  On redirect, the State's expert testified that based on an analysis of all the alleles in the black stocking cap, there was a "1 in 7.5 billion possibility you can run it random and pick someone who would be in the mixture."  (Id. at 183.)  In other words, "a random person being in that mixture would be a 1 in 7.5 billion chance."  (Id.)

"Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories."  Cagle v. Norris, 474 F.3d 1090, 1097 (8th Cir. 2007) (quoting Lyons v. Luebbers, 403 F.3d 585, 594 (8th Cir. 2005)).  "Judicial review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  Id. (quoting  Abdi v. Hatch, 450 F.3d 334, 337 (8th Cir. 2006)).

Petitioner fails to establish that his trial counsel's performance fell below an objective standard of reasonableness when he failed to call the FBI DNA Analyst as a witness.  Trial counsel cross-examined the State's expert analyst regarding the DNA extracted from the stocking caps and the CODIS database result matching Petitioner to it, and then questioned her at length on the possibility of uncertain results or error, the possibility that multiple persons may have the same

alleles, and the alleged discrepancy between Petitioner's alleles at the D2 locus and those in the CODIS match.  See, e.g., Dansby v. Hobbs, 766 F.3d 809, 835 (8th Cir. 2014) (any error by trial counsel in not calling expert witness was not substantial enough to warrant application of exception to procedural default where counsel cross-examined witness and brought out inconsistencies in the witness' story); see also Harrington, 562 U.S. at 111 (Strickland does not require "for every prosecution expert an equal and opposite expert from the defense.").

Further, Petitioner fails to show the FBI DNA Analyst's testimony would have provided a viable defense.  In support of this ground he submits an email exchange between Corcoran, the FBI Data Analyst Petitioner asserts should have been called as a witness, and the St. Louis County Police Department's Crime Laboratory.  (ECF No. 15 at 24-25.)  The emails show that Mr. Corcoran's testimony would not have supported Petitioner's theory—that the alleles at the D2 locus excluded Petitioner as a contributor to the DNA profiles developed from the black stocking cap—as the FBI Analyst's statements in the email are in fact consistent with the State DNA expert's testimony presented at trial.

Moreover, Petitioner cannot show that trial counsel's failure to call the FBI DNA Analyst prejudiced his defense.  In addition to the DNA evidence, Petitioner was positively identified at trial by a Mattress Firm employee eyewitness, and Petitioner confessed to the robberies both to police and to his family members in recorded jail calls.  (Resp. Ex. H, ECF No. 14-8 at 7-8.)  Thus, Petitioner cannot show a reasonable probability of a different outcome if his trial counsel had called the FBI DNA Analyst to testify.  Strickland, 466 U.S. at 694.

For these reasons, Petitioner fails to establish either ineffective assistance of counsel or that his claim is substantial.  Therefore, he has not shown cause and prejudice to excuse his procedural default of the claim under Martinez.  The Court will dismiss Ground Four as procedurally barred.

2. *Grounds Five and Six–Failure to Hire a DNA Expert, and Failure to Establish Petitioner's Indigence and Request Funds for a DNA Expert*

In Ground Five, Petitioner asserts that trial counsel was ineffective for failing to hire a DNA expert to challenge the State's presentation of DNA evidence from the stocking cap. (ECF No. 1 at 26-28.) In Ground Six, Petitioner asserts that trial counsel was ineffective for failing to establish his indigence and to request allocated funds to retain a DNA expert under § 600.086, Missouri Revised Statute. (Id. at 29-31.) Petitioner raised the fifth ground in his Amended Rule 29.15 post-conviction motion but, as with his fourth ground, abandoned it before the post-conviction evidentiary hearing and did not raise it on appeal. Petitioner raises the sixth ground for the first time in his § 2254 Petition.

For the reasons discussed above with respect to Ground Four, these grounds are without merit. Petitioner's trial counsel was able to cross examine the State's DNA expert regarding the information Petitioner claims his own expert could have testified about, and the information would not have provided Petitioner with a viable defense. Further, Petitioner cannot show prejudice because he was identified by an eyewitness and confessed both to police and to family members on recorded jail calls.

For these reasons, Petitioner fails to establish either ineffective assistance of counsel or that his claims are substantial. Therefore, he has not shown cause and prejudice to excuse his procedural default of the claims under Martinez. The Court will dismiss Grounds Five and Six as procedurally barred.

3. *Ground Seven – Failure to Investigate, Subpoena, and Call Alibi Witnesses*

In Ground Seven, Petitioner asserts that trial counsel was ineffective for failing to investigate, subpoena, and call Richelle Boyd and Michelle Williams as alibi witnesses at trial. (ECF No. 1 at 33.) Petitioner alleges that Ms. Boyd would have testified he was with her on May

12, 2012, at the time of the Check-N-Go robbery; and that Ms. Williams would have testified he was with her on May 28, 2012, at the time of the Mattress Firm robbery.  (Id. at 33-34.)  Petitioner asserts that his trial counsel knew of these witnesses' existence and could have located them had he attempted to do so; that the witnesses would have appeared at trial and testified if they had been subpoenaed; and their testimony would have supported an alibi defense.  (Id. at 33.)

Petitioner did not raise this claim in his Amended Rule 29.15 motion for post-conviction relief.  Thus, as discussed above, Petitioner must demonstrate he has a substantial claim of ineffective assistance of counsel under Strickland to avoid the procedural default.

Petitioner testified in his own behalf at trial, and he did not say that he was with Ms. Boyd or Ms. Williams during the time of the Check-N-Go or Mattress Firm robberies.  (Trial Tr. Vol. IV, ECF No. 14-15 at 103-145.)  Instead, Petitioner testified that during May 2012 he "was working like seven days a week" and living in a halfway house.  (Id. at 118, 145.)  If trial counsel had presented testimony that Petitioner was with Ms. Boyd on May 12, 2012, and with Ms. Williams on May 28, 2012, instead of being at work or in the halfway house, this evidence would have been inconsistent with Petitioner's own testimony.

In analyzing an ineffective assistance claim for failure to call a witness, courts should consider: "(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution."  Armstrong v. Kemna, 590 F.3d 592, 596 (8th Cir. 2010) (quoted case omitted).  The decision not to call a witness is a "virtually unchallengeable decision of trial strategy."  United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005).

Apart from the issue of these witnesses' credibility, any testimony by Ms. Boyd or Ms. Williams that Petitioner was with them at the time of the Check-N-Go and Mattress Firm robberies would have contradicted Petitioner's sworn trial testimony concerning his whereabouts at the time of the robberies.  Trial counsel cannot be ineffective for failing to present witnesses whose testimony would have conflicted with Petitioner's own testimony.  See, e.g., Helmig v. Kemna, 461 F.3d 960, 967 (8th Cir. 2006) (rejecting ineffective assistance of trial counsel claim for failure to call witnesses based on state courts' findings the witnesses were not credible, among other things).

Petitioner also cannot show prejudice in light of the strength of the State's case against him.  As stated above, Petitioner confessed to police, he was linked to one of the robberies through DNA evidence, and an eyewitness identified Petitioner as being the perpetrator of one of the robberies.  (Resp. Ex. H at 7-8.)  And at trial, Petitioner admitted that he confessed to his crimes in recorded calls to family members from the jail.  (Trial Tr., Vol IV, ECF No. Tr. at 137-38.)  In the jail calls, Petitioner also admitted that he dropped his hat during a robbery and that his DNA was on the hat.  (Id. at 139.)

As a result, Petitioner fails to establish either ineffective assistance of counsel or that his claims are substantial.  Therefore, he has not shown cause and prejudice to excuse his procedural default of the claim under Martinez.  The Court will dismiss Ground Seven as procedurally barred.

B.  Ground Eight – State Failure to Disclose Material Exculpatory Evidence

In Ground Eight, Petitioner asserts that the State failed to disclose material evidence and information regarding an alternate suspect.  Petitioner did not preserve this claim for federal habeas review by fairly presenting it to the state court during direct appeal proceedings.  See Sweet, 125 F.3d at 1149.  Where a prisoner has defaulted a federal claim in state court pursuant to an

independent and adequate state procedural rule, such as failing to raise it on appeal, federal habeas review of the claims is barred.  Coleman, 501 U.S. at 750.

As stated above, a petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice.  Id.  To satisfy the "cause" requirement, Petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner.  Id. at 753.

Petitioner again attempts to rely on the Martinez exception to the Coleman rule, but Martinez does not extend beyond claims of ineffective assistance of trial counsel.  Dansby, 766 F.3d at 833-34.  Because Ground Eight is not a claim of ineffective assistance of trial counsel, Petitioner cannot rely on Martinez to excuse his procedural default.  And Petitioner does not establish that a failure to review it would result in a fundamental miscarriage of justice, or the conviction of one who is actually innocent.

The claim raised in Ground Eight is procedurally barred from habeas review and will be dismissed.

### Claims Addressed on the Merits

The record shows Petitioner properly raised the following claims in State court and that the Missouri Court of Appeals denied relief on review of the merits.  The Court turns to the merits of the claims, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.

A.  Ground One – Trial Court Error – Denial of Right to Self-Representation

In Ground One, Petitioner asserts the trial court erred when it refused to grant his timely, unequivocal, knowing, and intelligent requests to represent himself at trial.  Petitioner contends that his Sixth Amendment right to self-representation was violated.

*1. Procedural Background*

It is useful to provide a detailed description of the procedural history of Petitioner's pretrial

proceedings in addressing this ground.

The record shows that on April 23, 2013, ten months before trial and prior to consolidation

of the five cases against him, Petitioner filed a pro se Motion to Remove Counsel and request to

proceed pro se. (Resp. Ex. E, Direct Appeal Legal File Vol. II, ECF No. 14-5 at 48).[4]  The motion

stated that Petitioner had "no confidence in the lawyers provided" and did "not intend to relinquish

any of [his] rights through representation from any attorney-third person relationship."  Petitioner

filed a Request for Hearing on his motion.  (Id. at 50).  Petitioner had previously filed at least three

pro se requests for speedy trial in the separate cases.  (Resp. Ex. D, Direct Appeal Legal File Vol

I, ECF No. 14-4 at 69, 111, 125).

The trial court held a hearing in one of Petitioner's cases on May 2, 2013, acknowledged

that Petitioner had filed a motion to represent himself, and asked if Petitioner wished to represent

himself in all of the cases.  (Resp. Ex. L Trial Tr. Vol I, ECF No. 14-12 at 5-6.)  Petitioner

responded, "I got to because [I am] a Moor."  (Id. at 1-3.)  Petitioner stated, "I don't need him as

my lawyer.  I want him off my case, right.  That's why I sent the motion over here.  You can't

force me to take a lawyer."  (Id. at 6.)  The trial judge told Petitioner that he needed to make an

informed decision on the issue.  (Id.)  The trial judge noted that not all of Petitioner's cases were

before the court because Petitioner had not been arraigned in one case, and stated, "[W]hen we

have all five cases, I'm going to set his motion to represent himself."  (Id. at 6-7.)  The judge told

Petitioner, "Between that time and now I think you should talk seriously to your attorney that you

---

[4]References to all page numbers in the Direct Appeal Legal File and state court transcripts are to this Court's CM/ECF pagination that appears at the top of the pages, not to the legal file numbers that are hand-written in the bottom right corner of the pages or printed in the bottom middle of the pages.

presently have because I think you will be making a very serious, very serious mistake if you decide that it would be in your best interest to represent yourself." (Id. at 8.)  Petitioner stated, "I don't need no lawyer.  You are trying to force something on me that I don't need.  I told you I don't need a lawyer.  I am my lawyer.  I'm a Moor.  I told you that.  You all kidnapped me basically." (Id.).

A few days after this hearing, Petitioner sent the trial judge a letter asking that his motion to remove counsel from his case be heard, and stating in part, "[I] will be pleading my cases myself in my lawful Sovereign Capacity . . . . [n]or can an Attorney exercise my Sovereign rights in a courtroom." (Resp. Ex. E, ECF No. 14-5 at 51.)  Two weeks later, Petitioner filed a document titled "Affidavit for Speedy Trial" that announced he was ready for trial.  (Id. at 52).  The trial court set a hearing on Petitioner's motions to represent himself in all of the cases (id. at 59), which took place on July 10, 2013.  (ECF No. 14-12 at 9.)

At the July 10, 2013 hearing, the trial judge first addressed Petitioner's pro se motions for speedy trial and denied them.  (ECF No. 14-12 at 11-12.)  The trial judge acknowledged that Petitioner had filed motions to remove counsel in all of his cases, and engaged in the following colloquy:

> THE COURT: I am going to deny all of those [motions for speedy trial], and the only thing that we were going to bring up today and I am going to go through is whether or not you want to represent yourself or if you want [public defender] Mr. Lewis to represent you.  Now if Mr. Lewis represents you, he's your attorney and he is to legally do the things that you ask him to do.  Now the other things I'll take up later.  Okay, Mr. Bolden, Mr. El?[5]  Okay.
>
> So now, listen, first of all, I want to ask you before we go through all this, do you want Mr. Lewis to represent you or not?  Here is the thing.  Let me tell you this: I'm going to read it to you right from a law book I have here.  The right to proceed pro se: "A request to proceed pro se must be unequivocal."  I don't know if you understand that word, but we're going to go through it.

---

[5]Petitioner previously informed the trial court that he had legally changed his name to Yusuf Abdullah El (ECF No. 14-12 at 9, 27).

THE DEFENDANT: I understand.

THE COURT: "Some defendants will assert that they wish to proceed pro se but at the same time insist on provision of funds to hire experts, investigators, take depositions, etc.  Conditional requests to proceed pro se do not amount to an unequivocal waiver of counsel and can be rejected."  Now it's my understanding that you are asking Mr. Lewis to take some depositions for you; is that true?

THE DEFENDANT: Yes.

THE COURT: That you want some of the alleged witnesses to the alleged offenses deposed; is that true?

THE DEFENDANT: I want all witnesses.

THE COURT: That's something that Mr. Lewis can do for you and will do for you.  I'm just telling you, I think it would be in your best interest if you retain Mr. Lewis as your attorney.

THE DEFENDANT: Well --

THE COURT: Now I know you're not going to agree with everything he tells you or everything he advises you, but I think you would be making a horrible, horrible mistake if you decided to represent yourself alone, because if I agree or enter an order that you are going to represent yourself pro se, you will represent yourself pro se.  I will not have standby counsel.  There will be no one sitting with you during the trial, and the law also says -- and I want you to read this. You've always been a gentleman in front of me.  You got a little upset one day when you had to wait for two or three hours.

THE DEFENDANT: I'm here for something that I shouldn't be in for.  That's why.

THE COURT: I understand that.  I understand your position on that but -- okay.  It says, "The defendant forfeits the right to self-representation by failing to conduct himself in accordance with orderly procedure."  In other words, you have to be a gentleman in court, and you got to do things appropriately.  If you don't, I can't let you proceed.  Now just knowing the things that I have told you briefly, do you want Mr. Lewis to represent you?  He's a fine lawyer.  He's --

THE DEFENDANT: It's like this, okay.  If you all is not going to honor my speedy trial motion because by constitutional right it states right here, in all criminal prosecutions the accuser shall enjoy rights to speedy trial, public -- all criminal prosecution, the accuser shall enjoy the right to a speedy and public trial by impartial jury of the state and district wherein the crime shall have been committed. District shall have been previous asserted by the law to be informed of the nature

and cause of the prosecution of the confronted with the witness against him, to have compulsory process for obtaining witness in his favor, and to have an assistant counsel for his defense.

If I was allowed my speedy trial, yes, I was going to have him help me. Since you are not going to honor my speedy trial, I don't want counsel.  I'm just going -- because I'm a Moor.

THE COURT: It's -- now, wait.  It's not going to move on any quicker whether you want yourself or not.  I think we can try this thing -- it would be more efficient for you and the Court if you kept Mr. Lewis as your lawyer.  He can set up the depositions.  He can make sure you've got your discovery.  He can do the things that you request within reason, and we can move this along, and I'll guarantee you that you will get the first setting when you think everyone has been deposed, all the evidence has been reviewed by your attorney and so forth, but I think because these are -- Do you understand that all of the Robbery in the First Degrees are A Felonies and all the armed criminal actions, they go up to life in prison, and this will be your one -- Now, wait.  In each one of these cases, this is going to be your one and only chance.  If you represent yourself, I'm telling you I think it would be a big mistake.  I hope you will heed my advice and I'm going -- I want you to think about this a couple of days, because I don't want you to do something today that 5 years or 10 years or 15 years from now that you regret that you didn't listen to me or you didn't listen to your attorney, Mr. Lewis.  He's a good lawyer.  He's been successful in my court on some motions he's had with me.  I think he'll do a fine job.  I just think that you will be making a horrible mistake if you were to try these cases by yourself.

THE DEFENDANT: I understand that, but what I'm saying is, by me being a Moor, actually a lawyer cannot represent a Moor, but on the -- I had a speedy trial, I was willing to go to trial by the end of this month, then I was willing to --

THE COURT: I don't have a trial date by the end of this month.

THE DEFENDANT: If I file a speedy trial motion in February, February 5th, I am entitled to a speedy trial because I got motions.  I got the papers, plain legal work, plenty of cases that show that I am eligible for speedy trial.

THE COURT: Here is what I am going to do:  One, I am going to deny your motion for speedy trial because it is not appropriate in the form that you've presented it to the Court.  Two, I'm going to have – I want you to think about this, about -- I want you to take one of these forms -- I want a copy, Mr. Moran -- one of these forms on waiving counsel.  I want you to read it thoroughly.  You read English language obviously.  I want you to read it so you know what's going to happen, and then if you tell Mr. Lewis that you still want to represent yourself pro se, I'll bring you over next week.  We'll go through everything, and then or he can tell me you don't and we can start hearing the motions that you filed with the Court

and the motions that he's filed with the Court.  I don't know if you made statements in these cases, whether there need to be motions to suppress evidence.  I don't know if there was evidence seized where there need to be motions to suppress evidence.  All I know is what you've been charged with.  This is basically what I know about your case beside I've read your motions.

So, Mr. Lewis, I want you to get a copy of that.  Please give it to him.  I want him to take it back with him.  I want you to look at it.  I want you to get with Mr. Lewis on Monday and tell him -- I don't want you to -- we'll copy one.  I'll get him a new one.  There would be one for each one of the five files.  You would have to waive counsel in each one of them, and I know there are some other Moors that are over in jail.  Is that true?

THE DEFENDANT: Yes, yeah.

THE COURT: They're going through the same process too.  I think what's going to happen is some of their trials are going to come up before us.  You are going to see what the result might be.

THE DEFENDANT: I'm not worried about the results.

THE COURT: I think you will if the result is not good.

THE DEFENDANT: I'm just ready for trial.  That's all I'm ready for.

THE COURT: I cannot try it.  Your motion for speedy trial in all five cases is denied.

THE DEFENDANT: So I can't -- how can you deny my right though?

THE COURT: Under the law -- and Mr. Lewis will explain it to you.  I need a memorandum to that effect.  I want you to look at this form thoroughly.  Let Mr. Lewis know by Monday whether or not you want to be represented.

THE DEFENDANT: So I can appeal all these?

THE COURT: Oh, yeah.  It's on the record.  She's -- you can appeal this, the decision I made today.  You can appeal it until everything is over.  You can file a writ with the Court of Appeals.  I don't know what they might do with it.  You can file a writ with the Court of Appeals if you so wish.  We could go from there.

MR. KEY [Prosecutor]: Your Honor, if I can.  Is it clear if he does not have the public defender he is not able to use their offices for depositions or anything like that?

THE COURT: That's what I tried to tell him.  The law says your decision must be unequivocal, that if you want to do depositions and stuff, if you want them to have -- I cannot give you funds for that, that it just says -- I'm going to read it to you.  "A request to proceed pro se must be unequivocal.  Some defendants will assert that they wish to proceed pro se but at the same time insist on the provision of funds to hire experts, investigators, take depositions, etc.  Conditional requests to proceed pro se do not amount to an unequivocal waiver of counsel and can be rejected." So if you want Mr. Lewis to depose these people, if you want Mr. Lewis to file motions to suppress, if you want Mr. -- evidence or statements, that is not an unequivocal request to act pro se.  When I say you're pro se, you will never see Mr. Lewis again.  You will never see an attorney from the prosecutor's office.  I think you will be making a mistake.

So I'm going to ask Mr. Lewis to get back with me on Monday as to what your intentions are.  At that time if you still wish to represent yourself, I'll have you brought over.  We will go through everything next week and you will be your attorney, but I think you should talk about it and you should -- Do you have any family around St. Louis?

THE DEFENDANT: (Nodded)

THE COURT: You should talk to them about it too so -- so you can -- whether Moors or not, so that you can make an informed decision. Okay?

. . . .

THE COURT: Mr. Lewis, get with me on Monday.  If you need to talk to Mr. Lewis in the next couple  of days, we'll discuss it with you.  If you have a good friend, good relatives --

THE DEFENDANT: I'm going to represent myself.  There's no need to talk about it.  Since I can't have a speedy trial, I'm just going to represent myself.

THE COURT: I'm going to give you an opportunity to think about it.  I want you to go over this form.

THE DEFENDANT: I don't want an opportunity.  I'm just going to represent myself.

THE COURT: I'll bring you back next week.  We'll talk about it.  Thank you.

(Resp. Ex. L at 12-21).

22

Three weeks later, on July 31, 2013, the trial court conducted a hearing on Petitioner's pro se motions to remove appointed counsel and represent himself.  At this hearing, the trial judge stated:

> We met previously to discuss some matters before the Court.  It seems that in all five of these files the defendant has filed an affidavit and acknowledgement letter to remove counsel and a motion to remove counsel . I had the defendant over with his attorney a couple of weeks ago, and I told him or gave him my opinion that I thought it would not be in his best interest to represent himself.  Mr. Moore, for the record, is a public defender in our county and a fine attorney -- Mr. Lewis, Steven Lewis, but -- If I say anything wrong, Mr. Lewis, correct me.
>
> MR. LEWIS: Okay.
>
> THE COURT: But it's my understanding and it's been my understanding since I've been on the bench the last few years, and I've had just two of these cases where individuals have represented themselves, that your office has a policy that you do not act as standby counsel or -- you're either the attorney or you're not.
>
> MR. LEWIS: That's correct.
>
> THE COURT: I have, Mr. Bolden, thought about this thoroughly and I know that you think that you have issues with the right to a speedy trial.  The one statute that applies; one, you're not in the Missouri state penitentiary, so that statute that deals with the speedy trial which I have to follow to the letter of the law does not apply.  So now all we have is your constitutional right to a speedy trial, and we're going to move this on as quickly as I can.  I'm going to be honest with you.  I've read your pleading in all of these files, and you have filed a number of motions and a number of motions, and many of them deal with the fact that you are a Moor and you do not think because you are a Moor that you're subject to the jurisdiction of the constitution or laws of the U.S. or the jurisdiction or constitution or the laws of the State of Missouri.
>
> I believe that it would be in your best interest and the Court's best interest for the Court to deny your motions to -- your two motions in each file, acknowledgment letter to remove counsel, which is an affidavit, and a request to remove counsel.  I'm going to deny both of those.  I think it would be in your best interest that I do that and the Court's.  I'm concerned that if we went to trial that we might have issues during the trial which would put yourself and the Court in a very precarious situation where you might not be in the courtroom for one reason or another.
>
> I have talked with your attorney, Mr. Lewis, today, with Mr. Key.  It is my understanding just from discussing the cases with them that they're [sic] allegedly

issues of confessions that you gave in these cases.  There are allegedly issues of a possible identification in one of the cases, and it's also my understanding that you may want to have or depose all of the victims of the alleged offenses in all of the cases.  If I were to let you represent yourself, you would not have the resources to do those things, where Mr. Lewis does have the resources, and as your attorney, he tells me that he is going to file motions to suppress evidence, motion to suppress identification, and if in the cases where it's appropriate he will depose those individuals that he thinks are critical to your case.

I have told him that as soon as he files those that I am going to move this case along as quickly as possible.  I don't know if the State -- for purposes of this hearing all three of these files contain very serious charges.  I think they're -- all five of them are Class A Felonies, robberies, and unclassified felonies of armed criminal action.  So that means all of them go up to life in prison.  I think it would be in your best interest and the Court's best interest that Mr. Steven Lewis remain as your counsel.

I am going to ask that he file the appropriate motions to defend you expeditiously, and I am going to set those and try to set this for trial as soon as possible.  I know you may not be happy with that, but that's the decision I am going to render, so if I can get a memorandum to the effect that those motions to represent himself pro se as they're styled are denied, and we will move this case along.  I'll ask that your attorney make sure that all the discovery is made available to you and that all the motions that he files with the Court are made available and that if he believes any of the motions that you have filed with the Court -- I've already denied your motion for a speedy trial, and I am going -- am denying your motions to represent yourself pro se, but if any other of the individual motions that you have filed on behalf of yourself are -- should be heard by the Court, I'll ask him to call those up.

(ECF No. 14-12 at 22-26.)

On August 7, 2013, Petitioner filed another pro se Motion to Remove Counsel (ECF No. 14-5 at 61).  In the motion, Petitioner stated he had "no confidence in the lawyers provided," that he did not "intend to relinquish any of [his] rights through representation from any attorney-third person relationship," and "[appointed counsel] will not represent me inside the Courtroom or outside the courtroom in any capacity from this day on which is August 4, 2013."  (Id.)  Petitioner added,

Judge DEPRIEST I had a hearing on July 31, 2013, and which you then denied my right to proceed Sui Juris and Pro'Se and which you can't because it is Supreme

Court Ruling and this is the case law.  STATE v. Gomez (App. E.D. 1993) 863 S.W. 2d 652 criminal Law 641    4  (1).

I will not accept any public defender because they are paid by the State just like you Judge and the prosecuter [sic] are to[o].  It is a conflict of interest and Mr. Steven Lewis let you violate my rights and didn't confront you at all when you are in the wrong.

(ECF No. 14-5 at 61.)

During the time the trial court was considering Petitioner's request to represent himself and after it denied the request, Petitioner filed a number of pro se motions, including motions to suppress statements (ECF No. 14-5 at 53); to quash indictment and suppress evidence (id. at 55, 62, 70); to suppress photo lineup (id. at 58); for speedy trial (id. at 56, 63, 66, 69); and to dismiss for violation of statutory and constitutional right to speedy trial (id. at 64, 67).  Petitioner filed another motion to remove counsel on August 7, 2013 (ECF No. 14-5 at 71).  It does not appear this motion to remove counsel was ever ruled upon.

Following his conviction, Petitioner appealed the trial court's decision denying him the ability to represent himself.  The Missouri Court of Appeals discussed the law and applied it to the facts relevant to this claim as follows:

> For his first point, Bolden asserts that the trial court erred in denying his motion to represent himself.  There are four requirements for a defendant seeking to waive his right to counsel and proceed *pro se*: the waiver must be timely, unequivocal, knowing, and intelligent.  State v. Black, 223 S.W.3d 149, 153 (Mo. 2007).  A trial court has no discretion to force an attorney upon a competent defendant whose waiver satisfies the four criteria.  Id.  However, a court must indulge in every reasonable presumption *against* a defendant's waiver of his right to counsel and require the defendant to make a knowing, intelligent, voluntary, and unequivocal request before concluding that he has waived his right to counsel.  State v. Hampton, 959 S.W.2d 444, 447 (Mo. 1997) (citing Brewer v. Williams, 430 U.S. 387, 404 (1977), and Hamilton v. Groose, 28 F.3d 859, 862 (8th Cir.1994)). (emphasis added)  The probability that a defendant will appeal either decision of the trial judge (*i.e.*, the grant *or* denial of the motion) underscores the importance of requiring a defendant who wishes to waive his right to counsel to do so explicitly and unequivocally.  Id.

The record reveals that Bolden's waiver was conditional and neither unequivocal nor knowing and intelligent.  On one hand, Bolden insisted repeatedly that he wished to represent himself, reasoning that "a lawyer cannot represent a Moor," but, on the other hand, Bolden agreed to be represented by counsel provided that the court grant him a speedy trial "by the end of the month."  Additionally, the trial court explained to Bolden that the resources of the public defender's office would not be available to him as a *pro se* defendant, yet Bolden asserted that he wanted all witnesses to be deposed.  Finally, the court implored Bolden to read and consider a standard form advising defendants of the hazards of self-representation, but Bolden refused to read it and told the court that he didn't want an opportunity to think about the implications of his decision.  On this record, despite the vehemence of Bolden's request to represent himself, we are not convinced that his waiver of counsel was unequivocal, knowing, or intelligent.  Point denied.

(Resp. Ex. C, ECF No. 14-3 at 2-3).

> *2. Legal Standard*

The question of whether the record supports a finding that Petitioner conditionally invoked his right to self-representation, and did not unequivocally, knowingly, and intelligently invoke the right, is a mixed question of law and fact.  See Finch v. Payne, 983 F.3d 973, 979 (8th Cir. 2020) (citing United States v. Gaudin, 515 U.S. 506, 512 (1995) ("application-of-legal-standard-to-fact sort of question[s]" are mixed questions of law and fact)).  Mixed questions of law and fact in the habeas context are reviewed under § 2254(d)(1)'s "unreasonable application" clause.  Id. (citing Williams, 529 U.S. at 413).

The distinction is "critical" because the Missouri Court of Appeals' "determinations, as facts applied to law, are not afforded the 'presumption of correctness' of § 2254(e)(1).  Section 2254(e)(1) only applies to factual issues."  Finch, 983 F.3d at 979-80.  Factual issues are defined as:

> basic, primary, or historical facts: facts "in the sense of a recital of external events and the credibility of their narrators . . . ."  So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense.

Id., 983 F.3d at 980 (quoting Townsend v. Sain, 372 U.S. 293, 309 n.6 (1963) (alteration in original) (citation omitted)).  Here, the relevant historical facts of Petitioner's case are set forth in the underlying court transcripts and filings.  This Court is "tasked only with considering whether 'the[se] historical facts . . . satisfy the legal test chosen.'"  Finch, 983 F.3d at 980 (quoting Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1069 (2020)).  Thus, this Court's "review is limited to determining only whether the [Missouri Court of Appeals'] disposition of [Petitioner's] case 'involved an unreasonable application of [ ] clearly established Federal law.'"  Id. (quoting 28 U.S.C. § 2254(d)(1)).]

> Under  § 2254(d)(1) we must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S. Ct. 1495.  "An 'unreasonable application' is different from an incorrect or erroneous application; a prisoner must establish that a state court's adjudication was not only wrong, but also objectively unreasonable, such that 'fairminded jurists' could not disagree about the proper resolution." Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020), appeal docketed, No. 20-633 (U.S. Nov. 10, 2020) (citation omitted); see also Strong v. Roper, 737 F.3d 506, 510 (8th Cir. 2013) ("[I]t is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." (quoting Rousan v. Roper, 436 F.3d 951, 956 (8th Cir. 2006))).

Finch, 983 F.3d at 980.

*3. Discussion*

Respondent contends the Missouri Court of Appeals reasonably determined that Petitioner's assertion of the right to self-representation was conditional and equivocal, and that its decision was consistent with and a reasonable interpretation of federal law.

The Sixth Amendment provides criminal defendants with the right to counsel, as well as the right to waive counsel and proceed pro se.  United States v. Ladoucer, 573 F.3d 628, 633 (8th Cir. 2009) (citing Faretta v. California, 422 U.S. 806, 807 (1975)).  "[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or

abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).   A valid waiver of the right to counsel "requires 'an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" Shafer v. Bowersox, 329 F.3d 637, 647 (8th Cir. 2003) (quoting Von Moltke v. Gilles, 332 U.S. 708, 724 (1948)).[6]  "Warnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." Iowa v. Tovar, 541 U.S. 77, 89 (2004).

"'If [a defendant's] request' to 'assert his right to self-representation' 'is clear and unequivocal, a Faretta hearing must follow.'" Finch, 983 F.3d at 980 (quoting United States v. Kelley, 787 F.3d 915, 918 (8th Cir. 2015) (alteration in original)).   "[T]he Supreme Court has clearly established that the presiding court must inquire into [the defendant's] understanding of the right and must warn him of the dangers involved in order to ensure that he has full knowledge of the consequences" of exercising his constitutional right to self-representation. Shafer, 329 F.3d at 647.  "To 'make certain that an accused's professed waiver of counsel is understandingly and wisely made,' a trial judge must undertake a 'penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.'" Id. (quoting Von Moltke, 332 U.S. at 724).  "A trial court also has responsibility to ensure that the defendant is 'aware of the dangers

_____

[6]The Court is mindful that the Eighth Circuit subsequently stated neither it nor the Supreme Court "has adopted the Von Moltke plurality opinion in all of its particulars," and that it rejects the "contention that a waiver of the right to counsel must exhibit all of the features discussed in Wilkins [v. Bowersox, 145 F.3d 1006 (8th Cir. 1998),] before it is deemed knowing and voluntary." United States v. Kiderlen, 569 F.3d 358, 367 (8th Cir. 2009).

and disadvantages of self-representation' so that his 'choice is made with eyes open.'" Id. at 648
(quoting Faretta, 422 U.S. at 835).

Based on the record set forth above, the Missouri Court of Appeals found that Petitioner's
waiver of his right to counsel was "conditional and neither unequivocal nor knowing and
intelligent." (Resp. Ex. C, ECF No. 14-3 at 2-3).  The court of appeals acknowledged Petitioner's
repeated insistence that he wanted to represent himself, but found his waiver to be conditional
based on what it characterized as Petitioner's agreement "to be represented by counsel provided
that the court grant him a speedy trial 'by the end of the month.'" (Id.).  This finding misstates the
facts in the record.  After the trial court denied Petitioner's pro se motions for speedy trial,
Petitioner stated he would have accepted the assistance of counsel if he had been allowed a speedy
trial, but because his motions for speedy trial were denied, he did not want counsel.  The trial judge
was clear that Petitioner's case could not be tried within the time requested by Petitioner in his pro
se motions.  Petitioner was equally clear: "Since you are not going to honor my speedy trial, I don't
want counsel."  "I'm going to represent myself.  There's no need to talk about it.  Since I can't have
a speedy trial, I'm just going to represent myself."  (Resp. Ex. L at 21).

The Missouri Court of Appeals found that Petitioner's waiver of the right to counsel was
equivocal because the trial court explained to Petitioner that the resources of the public defender's
office would not be available to him as a *pro se* defendant, and Petitioner stated he wanted all
witnesses to be deposed.  The court of appeals failed to view this statement in its contextual setting.
This exchange was only one aspect of the trial court's colloquy with Petitioner at the July 10, 2013
hearing, during which the trial judge repeatedly urged Petitioner not to waive his right to counsel,
to think about the decision for a few days, and to consult with others about whether he wanted to
do so.  As quoted above, the trial judge said toward the close of the hearing, "So *if you want* Mr.

29

Lewis to depose these people, *if you want* Mr. Lewis to file motions to suppress, *if you want* Mr. - - evidence or statements, *that is not an unequivocal request to act pro se*.  When I say you're pro se, you will never see Mr. Lewis again.  You will never see an attorney from the prosecutor's office.  I think you will be making a mistake."  (ECF No. 14-12 at 19) (emphases added).

The trial judge then said, "So I'm going to ask Mr. Lewis to get back with me on Monday as to what your intentions are. *At that time if you still wish to represent yourself, I'll have you brought over.  We will go through everything next week and you will be your attorney*, but I think you should talk about it [with your family and friends.]"  (Id. at 20) (emphases added).  Petitioner responded, "I'm going to represent myself.  There's no need to talk about it.  Since I can't have a speedy trial, I'm just going to represent myself."  (Id. at 21.)  The trial judge said he would give Petitioner an opportunity to think about it and wanted Petitioner to read a form, and Petitioner responded, "I don't want an opportunity.  I'm just going to represent myself."  (Id.)  Each time Petitioner was allowed to speak, he stated he did not want counsel and made an unequivocal request to represent himself.

At the subsequent hearing, the trial court did not "go through everything" with Petitioner as it said it would do.  The trial court did not engage in any further discussion with Petitioner about his request to represent himself, and never engaged in a proper Faretta hearing to determine whether Petitioner's unequivocal request to represent himself was knowing and voluntary.  Instead, the trial court engaged in a monologue about the reasons it would be a mistake for Petitioner to represent himself, and why it would be better for Petitioner and for the court if he were represented by counsel.  The trial court then told Petitioner it was making the decision for him.  As a result, there are no facts to show that Petitioner made an express decision he wanted appointed counsel to depose witnesses on his behalf.

Applying the historical facts of the record to <u>Faretta</u>, the Court concludes that Petitioner clearly and unequivocally invoked his right to self-representation in his numerous written pro se motions to remove counsel and by his statements at the May 2, 2013 and July 10, 2013 hearings. Once Petitioner invoked that right, the trial court was required to conduct a proper <u>Faretta</u> hearing. <u>See</u> <u>Finch</u>, 983 F.3d at 981.  The Missouri Court of Appeals' finding to the contrary is objectively unreasonable.[7]

The Missouri Court of Appeals also found Petitioner's waiver was not knowing and intelligent because the trial court urged Petitioner at the July 10, 2013 hearing to read and consider a standard form advising defendants of the hazards of self-representation, but Petitioner stated he would not read it and told the court he didn't want an opportunity to think about the implications of his decision.  The record shows, however, that Petitioner did not say he would not read the form. Rather, he stated he did not want an opportunity to think about the decision whether to represent himself.

The record demonstrates that the trial court did not determine, as required by <u>Faretta</u>, whether Petitioner was making a knowing and intelligent waiver of counsel.  In <u>Faretta</u>, the Supreme Court acknowledged that a defendant who waives counsel loses the skill and experience of counsel, but he may do so as long as "he knows what he is doing and his choice is made with eyes open."  422 U.S. at 835.  At the July 10 hearing, the trial judge told Petitioner that if represented himself, he would have no money to hire experts and investigators and to take depositions, his appointed counsel would not be able to file motions to suppress evidence or statements, he would never see the public defender again and it would be a big mistake, and then

---

[7]The trial court made no finding or statement that Petitioner's request to represent himself was conditional.

the judge gave Petitioner three weeks to think about those issues and discuss them with counsel, family, and other Moors.

But when Petitioner returned to court three weeks later, the trial judge did not ask him a single question in an effort to determine whether Petitioner's waiver of the right to counsel was knowing and voluntary.  The trial court had previously advised Petitioner at a general level about some of the limitations and perils if he chose to represent himself, but it did not probe whether Petitioner understood the risks and consequences of representing himself during this colloquy, as Faretta requires.

Instead, the trial court engaged in a monologue and explained why it had denied Petitioner's motions for speedy trial, stated that Petitioner had filed many pro se motions that "deal with the fact that you are a Moor and you do not think because you are a Moor that you're subject to the jurisdiction of the constitutional or laws of the U.S. or the jurisdiction or constitution or the laws of the State of Missouri."  (ECF No. at 14-12 at 23.)  The trial court then denied Petitioner's motions to remove counsel because "I think it would be in your best interest that I do that and the Court's."  (Id. at 23-24)  The trial court said it was concerned there might be "issues during the trial which would put yourself and the Court in a very precarious situation where you might not be in the courtroom for one reason or another."  (Id. at 24.)  The trial court then stated there were issues in the case that Petitioner had given confessions, and there was an issue of a possible identification on one case; that "it's my understanding that you may want to have or depose all of the victims," and if Petitioner were to represent himself he would not have the resources to "do those things."  (Id.)  Finally, the trial court said that Petitioner was facing serious charges with potential life sentences, and "it would be in your best interest and the Court's best interest that [the public defender] remain as your counsel."  (Id. at 25.)

In so doing, the trial court erred by failing to adequately investigate Petitioner's request to represent himself before denying the request.  The trial court did not state that its decision was based on a finding that Petitioner's waiver of the right to counsel was equivocal, or that was unknowingly and unintelligently made.  Instead, the trial court made the decision based on its view of the merits of the arguments Petitioner made in his pro se motions; on its concern that Petitioner would engage in conduct that would cause "a very precarious situation where [he] might not be in the courtroom for one reason or another" – which is not supported by any facts that appear in the record – and on its assumption that Petitioner would want to depose witnesses but could not do so without counsel.

While the trial court's concerns were not unfounded about the merits of Petitioner's arguments regarding his status as a "Moor" and the court's jurisdiction over him, as well as the potential for this to disrupt courtroom proceedings, these concerns should not have formed the basis for its determination.  Courts have repeatedly concluded that defendants may represent themselves despite having frivolous beliefs about the law, including with respect to the exercise of jurisdiction over a defendant.  See, e.g., United States v. Taylor, 21 F.4th 94, 102 (3d Cir. 2021) (district court erred in denying defendant's request to represent himself based on his "sovereign citizen" arguments and their potential to upend courtroom proceedings); United States v. Johnson, 980 F.3d 570 (7th Cir. 2020) (holding district court did not err in allowing a "sovereign citizen" to represent himself); United States v. Mesquiti, 854 F.3d 267 (5th Cir. 2017) (same).  This is because the trial court's assessment of Petitioner's "Moor" claims "sheds little light on the defendant's appreciation of the risks and consequences of self-representation."  Taylor, 21 F.4th at 102.  Further, "The type of conduct required for a court to deny a defendant's request to proceed pro se generally requires extreme disruption of the judicial process."  Finch, 983 F.3d at 982.  "Unless

other aggravating factors are present, courts typically do not deny a defendant's initial motion to proceed pro se, but instead revoke the previously granted self-representation if the defendant subsequently engages in obstructionist behavior."   Id.   Here, the record does not indicate that Petitioner engaged in disruptive conduct, frustrated any hearings, or was attempting to manipulate, subvert, or delay the trial process.

In addition, a court is not permitted to consider whether the defendant "could have ably defended himself."  Jones v. Norman, 633 F.3d 661, 667 (8th Cir. 2011) (citing United States v. Mendez–Sanchez, 563 F.3d 935, 945 (9th Cir. 2009) ("Faretta itself makes clear the view that self-representation in most cases will have negative consequences.   But despite the potential ill-consequences of self-representation, we permit it because of our society's respect for individual dignity, once the individual has been fairly advised of consequences and has made a knowing and intelligent decision.")).

Where the trial court never engaged in a Faretta hearing to determine whether Petitioner's unequivocal waiver of his right to self-representation was knowing and intelligent, the Missouri Court of Appeals' finding that Petitioner's waiver was not knowing and intelligent because he stated he did not want to think it about and refused to read a form essentially excuses the trial court from the requirement to engage in a proper Faretta hearing.   This finding is objectively unreasonable.

After careful consideration and review of the record, the Court concludes the Missouri Court of Appeals' decision was an unreasonable application of clearly established Sixth Amendment Federal law.  28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.  The Court further concludes that Petitioner was unconstitutionally denied a Faretta hearing after his unequivocal requests to represent himself.   The denial of the right to self-representation is a

structural error not amenable to "harmless error" analysis, because it affects the framework within which the trial proceeds. McKaskle v. Wiggins, 465 U.S. 168, 177-78, n.8 (1984); United States v. Gonzalez-Lopez, 548 U.S. 140, 148-49 (2006). As a result, Petitioner is entitled to a writ of habeas corpus ordering Respondent to release Petitioner from all custody resulting from the Judgment and Sentence within one hundred eighty (180) days after this Order becomes final (including any appeals that may be taken), if the State of Missouri does not commence proceedings to afford Petitioner a Faretta hearing and a new trial.

B. Ground Two – Trial Court Error – Speedy Trial Violation

In Ground Two, Petitioner asserts that the trial court erred when it refused to dismiss his cases based on a violation of his right to a speedy trial.

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference. The Missouri Court of Appeals discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> For his second point, Bolden contends that the trial court erred by not dismissing his case for a violation of his right to a speedy trial. While this court defers to the trial court's factual findings and credibility determinations, we review *de novo* whether the constitutional right to a speedy trial was violated. State v. Sisco, No. SC 93785, 2015 WL 1094821, at *6 (Mo. banc Mar. 10, 2015). Determining whether a defendant's right to a speedy trial has been violated requires a balancing of four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. Id. Missouri courts have found a delay of greater than eight months is presumptively prejudicial, necessitating an examination of the other factors. Id. The delays in Bolden's cases before consolidation were 14 months and 10 months, so we consider the remaining factors.
>
> Different reasons for delay are assigned different weights. A deliberate delay to hamper the defense weighs heavily against the government, but negligence or overcrowded courts are weighted less heavily. Id. at *6 (quoting Barker v. Wingo, 407 U.S. 514, 531 (1972)). Delays attributable to the defendant weigh heavily against the defendant. Id. at *7. Bolden asserts that the delays in his case were entirely attributable to the State or to the trial court. For example, Bolden notes that five to six months passed between his confessions and the State's

complaints, during which Bolden was incarcerated.  But the record does not permit an inference that the delays were deliberate to hamper the defense.  Bolden also impugns the trial court for staying proceedings until all five cases were consolidated before the court and for imposing additional time for Bolden to reflect on the dangers of self-representation.  But the trial transcript confirms that the court's docket was at high volume and the government actors were working to obtain all case files for consolidation and bring Bolden's case to trial as soon as logistically possible.  For example, the court stated (excerpts):

> I understand that it is a right to have a speedy trial, but you must understand I have other cases that are much older than this that are going to be tried before yours.  Many of them are just as serious as yours.  I cannot move yours up just because you think I should.

> Mr. Key [prosecutor], could you make sure these [cases] get here as soon as possible?

> Can you [clerk] get the other one?  See he gets arraigned on it.

> When we have all five cases, I'm going to set his motion to represent himself in this court on all five cases.

On this record, the delays of which Bolden complains do not weigh heavily against the government.  By contrast, the court's docket sheets reveal voluminous filings by Bolden himself (approximately 60 over 10 months in a single case) and additional motions filed by counsel, in both instances demanding the court's time and attention and sometimes requiring the State's response and pre-trial hearings.  While a defendant is entitled to file such motions and have them adjudicated, the resulting delay is attributable to the defendant.  Id. at *9.

On the third factor, the State concedes that Bolden asserted his right to a speedy trial early and often.  On the fourth factor, "whether a delay prejudiced the defendant is evaluated in light of three concerns: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired."  Id.  "Courts view the third consideration as the most serious."  Id.  Lewis claims prejudice in that he remained incarcerated for over a year pending trial.  But incarceration alone is not sufficient to establish prejudice.  See State v. Green, 389 S.W.3d 684, 692 (Mo. App. S.D. 2012), and State v. Greenlee, 327 S.W.3d 602, 613 (Mo. App. E.D. 2010) (holding that incarceration and anxiety may be determined insufficient to find prejudice when defendant fails to demonstrate impairment of his defense).  Bolden's claim of prejudice solely from his incarceration is further undermined given that he was sentenced to life in prison plus 25 years.  See Greenlee, 327 S.W.3d at 613 (finding no prejudice from extended pre-trial incarceration where defendant was sentenced to life in prison).  Guided by the foregoing authorities, deferring to the trial court's factual findings, and balancing all relevant factors as

36

presented on this record, this court concludes that Bolden's right to a speedy trial was not violated.  Point denied.

(Resp. Ex. C, ECF No. 14-3 at 3-6).

Petitioner's speedy trial claim in his federal habeas case is properly analyzed under the Sixth Amendment as determined by Barker v. Wingo, 407 U.S. 514 (1972) ("Wingo").  Under the Wingo test, reviewing courts must assess the length of delay, the reasons for the delay, the defendant's assertion of the right, and prejudice.  Id. at 530.

The Court has reviewed the parties' briefs, the Missouri Court of Appeals' decision, and the underlying legal file, and finds the ground for relief to be without merit.  Petitioner fails to establish that his constitutional right to a speedy trial was violated under the standard established by Wingo, 407 U.S. at 530.  The Missouri Court of Appeals applied the Missouri Supreme Court's Sisco standard, which is equivalent to the Wingo standard, see State v. Sisco, 458 S.W.3d 304, 313 (Mo. 2015) (en banc), found the delay presumptively prejudicial, and then considered the remaining Wingo factors: "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Id. at 530.

The court found that some of the delay was attributable to the State's crowded trial docket and the trial court's decision to wait and consolidate Petitioner's five cases before going forward, but it did not find the delay to be a deliberate attempt by the State to hamper the defense.  It also found that some delay was attributable to the numerous motions Petitioner filed, which the trial court had to address.  The court properly recognized that Petition asserted his speedy trial rights "early and often."

With respect to the prejudice prong of the Wingo test, the Supreme Court has explained:

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.  This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize

anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Wingo, 407 U.S. at 532.  In its analysis of prejudice as a result of the pretrial delay, the Missouri Court of Appeals considered the length of time Petitioner was incarcerated prior to trial, which was the only assertion of prejudice he raised.

The Court finds that the Missouri Court of Appeals' determination of this issue was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision based on an unreasonable determination of the facts.  28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.

Ground Two will be denied.

C.  Ground Three – Ineffective Assistance of Counsel – Petitioner's Testimony at Suppression Hearing

In Ground Three, Petitioner asserts that trial counsel was ineffective for failing to present testimony from Petitioner concerning threats and promises made to him by an FBI Agent at a hearing on Petitioner's motion to suppress his statements to police.

Petitioner raised this claim in his amended Rule 29.15 post-conviction motion and the motion court denied it following an evidentiary hearing.  The Missouri Court of Appeals affirmed. Respondent argues the Missouri Court of Appeals' decision denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals discussed the ineffective assistance of counsel claim as follows:

**B. Motion to Suppress Hearing and Trial**

Prior to trial, defense counsel filed motions to suppress Movant's statements, alleging, *inter alia*, the confessions were involuntary because of "threats and promises made to defendant prior to and during the interrogation[.]" At the suppression hearing, the State called the five detectives who took Movant's

statements.  Each detective testified that no threats or promises were made to Movant to induce his confessions.  Defense counsel did not call Movant to testify nor did the State call the FBI Agents.  Following the hearing, the trial court denied the motions to suppress.

A jury trial was held.  Ultimately, the jury found Movant guilty of three counts of first-degree robbery, one count of attempted first-degree robbery, and three counts of armed criminal action.  The jury was hung on one count of first-degree robbery and the associated count of armed criminal action, and the State filed a Memorandum of Nolle Prosequi, dismissing those charges.  Movant was sentenced to life imprisonment on the counts of first-degree robbery, twenty-five years' imprisonment on the counts of armed criminal action, and fifteen years' imprisonment on the count of attempted first-degree robbery.  The trial court ordered that all sentences run concurrently, except for one count of armed criminal action, for a total sentence of life imprisonment plus twenty-five years.

This Court affirmed Movant's convictions and sentences on direct appeal. State v. Bolden, 489 S.W.3d 821 (Mo. App. E.D. 2015).

### C. Post-Conviction Relief Motion and Evidentiary Hearing

Movant timely filed a *pro se* Rule 29.15 post-conviction relief motion. Post-conviction counsel was appointed and entered his appearance on Movant's behalf.  Post-conviction counsel requested an additional thirty days to file an amended motion, which the motion court granted.  Thereafter, Movant timely filed an amended motion and requested an evidentiary hearing.  Movant alleged, *inter alia*, trial counsel was ineffective for failing to call Movant to testify at the suppression hearing because the trial court would have heard that FBI Agents (1) threatened to lock up his mother and cousin, and take his cousin's children, and (2) promised Movant that if he pleaded guilty to various St. Louis County cases, he would receive concurrent time with an Illinois robbery.  Movant alleged had the trial court heard his testimony, it would have ruled Movant's confessions were involuntary and would not have admitted them at trial.  Because the State's case against Movant was not strong, Movant argued there was a reasonable probability the outcome of the trial would have been different.

The motion court granted Movant's request for an evidentiary hearing. During the hearing, Movant and trial counsel testified. The motion court subsequently entered its findings of fact and conclusions of law, denying Movant's post-conviction relief motion.  This appeal follows.

<u>Standard of Review and Applicable Law</u>

Appellate review of decisions under Rule 29.15 is limited to whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); <u>Moore v. State</u>, 328 S.W.3d 700, 702 (Mo. banc 2010).  On review, the motion court's findings are presumed correct.  <u>Vaca v. State</u>, 314 S.W.3d 331, 334

(Mo. banc 2010).  Findings and conclusions are clearly erroneous if we are left with a definite and firm impression that a mistake has been made after reviewing the entire record.  Moore, 328 S.W.3d at 702.

To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test.  First, the movant must demonstrate that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances.  Worthington v. State, 166 S.W.3d 566, 572-73 (Mo. banc 2005) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  Second, the movant must show that trial counsel's deficient performance prejudiced him.  Id.  To satisfy the first prong, the movant must overcome a strong presumption that trial counsel provided competent representation by pointing to specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.  Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006).  To satisfy the second prong, the movant must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would have been different.  Id.

Discussion

In his sole point on appeal, Movant argues the motion court clearly erred in denying his post-conviction relief motion following an evidentiary hearing because he proved he was denied his rights to due process and effective assistance of counsel, in that he proved trial counsel was ineffective for failing to call him to testify at the motion to suppress hearing.  Movant argues trial counsel's error ensured the trial court did not learn before trial began that FBI Agents (1) threatened to lock up Movant's family members and take his cousin's children, and (2) promised Movant time on the St. Louis County robberies would "run in" with time for an Illinois bank robbery.  As the FBI Agents' "carrot-and-stick pledge" induced his subsequent confessions, Movant argues the trial court would have ruled his confessions were involuntary and inadmissible.  We disagree.

During the evidentiary hearing, Movant testified that on September 12, 2012, the day he was arrested, he repeatedly denied committing the five Missouri robberies.  Then, on September 13, Movant spoke with two FBI Agents who were investigating a bank robbery in Illinois.  Movant denied committing either of the robberies.  The next day, Movant again met with the FBI Agents. The FBI Agents informed Movant they talked to his family members.  Movant testified the FBI Agents threatened to "lock up" Movant's mother and cousin, and take away his cousin's children if Movant did not confess to the robberies.  Movant also testified the FBI Agents promised that if he confessed to the Illinois and Missouri robberies, "they would leave my family alone," and Movant would only serve between three and five years in federal prison in Illinois.  Movant testified he was promised his sentence for the Missouri robberies would run concurrently with the three-to-five year sentence for the Illinois robbery, and he would not receive additional prison time for the Missouri robberies.  Movant testified he thought "it was a good deal" so he confessed to the five Missouri robberies.  Movant testified that, prior to the

suppression hearing, he informed defense counsel about the FBI Agents' threats and promises.

Defense counsel acknowledged he was aware of the alleged threats and promises made by the FBI Agents.  Counsel testified he spoke with Movant's mother and cousin, and "they never supported the idea that they were pressured in any way."  Rather, Movant's mother and cousin "thought it was best to let them search the house and they cooperated with any searches but they didn't, to my understanding, feel threatened in any significant way."  Additionally, defense counsel acknowledged Movant said he was offered a deal in which his prison time would "run in" with his federal time, however, Movant did not tell defense counsel he expected to serve only three-to-five years nor was defense counsel "aware of any specific deals."  Moreover, defense counsel testified he listened to the recorded jail calls between Movant and his family members.  Movant only conveyed that the FBI Agents discussed his gambling problem and that it may mitigate his sentence, but Movant never mentioned any threats or promises made to him.

Additionally, defense counsel testified he did not call Movant to testify at the suppression hearing because he thought Movant would testify at trial, and counsel did not want the State to know the content of Movant's testimony nor did counsel want Movant to make a statement that could be contradicted during trial. Defense counsel also testified Movant confessed to several family members on the recorded jail calls, and made statements that "he had gotten the idea to do . . . the different robberies from family members."  Counsel testified even if Movant's confessions to the police were suppressed, Movant's confessions to his family members would still be used as evidence.  Counsel believed the confessions on the jail calls were "in some ways . . . more damaging" than Movant's confessions to the police.  In addition to the jail call confessions, defense counsel noted Movant was positively identified at trial by the Mattress Firm employee, and Movant's DNA profile matched the DNA profile found on the ski masks from the Mattress Firm robbery.

Based on the evidence presented at the evidentiary hearing, we agree with the motion court's finding that defense counsel's decision not to call Movant to testify at the suppression hearing was reasonable trial strategy.  "The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." Williams v. State, 168 S.W.3d 433, 443 (Mo. banc 2005); see also Pinkard v. State, 694 S.W.2d 761, 762 (Mo. App. E.D. 1985) (counsel's decision not to call the defendant to testify at the suppression hearing was one of trial strategy and did not support a finding of ineffective assistance of counsel).  Here, defense counsel thoroughly investigated the issue of whether the FBI Agents threatened Movant's mother and cousin.  Defense counsel spoke with Movant's mother and cousin, and neither reported feeling pressured by the FBI Agents in any way.  In fact, they cooperated with the search of the house.

In addition, Movant never told defense counsel he expected to receive a three-to-five year sentence nor was defense counsel ever aware of a specific deal. Defense counsel listened to each of the recorded jail calls to Movant's family members, and Movant never mentioned any threats or promises of three-to-five years made by the FBI Agents. Based on the lack of corroborating evidence of the alleged threats and promises, defense counsel exercised the customary skill and diligence of a reasonably competent attorney under these circumstances by not calling Movant to testify at the suppression hearing. See Worthington, 166 S.W.3d at 573. Although Movant contends his testimony at the evidentiary hearing established his confessions were involuntary, the motion court clearly found defense counsel's testimony credible, and the court was free to accept counsel's testimony that he found no evidence of threats or promises. See Tate v. State, 461 S.W.3d 15, 24 (Mo. App. E.D. 2015). We defer to the motion court's determinations of credibility as it has a "superior opportunity to judge the credibility of the witnesses." Id.

Moreover, defense counsel testified that, as a matter of trial strategy, he did not call Movant to testify at the suppression hearing because counsel did not want the State to know the content of Movant's testimony prior to trial nor did counsel want Movant to make a statement that could be contradicted during trial. "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." Vaca, 314 S.W.3d at 335 (quoting State v. Johnston, 957 S.W.2d 734, 755 (Mo. banc 1997)); Hawkins v. State, 512 S.W.3d 112, 117 (Mo. App. E.D. 2017).

Furthermore, we agree with the motion court's conclusion that Movant failed to demonstrate prejudice. Besides the confessions to police, Movant confessed to the Missouri robberies in recorded jail calls to his family members, and the recordings were admitted into evidence at trial. Movant also was positively identified by one of the eye witnesses. Additionally, evidence was presented that Movant's DNA profile matched the DNA profile found on the ski mask he was wearing during one of the robberies. Therefore, given the weight of the evidence presented at trial, there is no reasonable probability the outcome of the trial would have been different had Movant testified at the suppression hearing. See Anderson, 196 S.W.3d at 33. Point denied.

Conclusion

We find the motion court did not clearly err in denying Movant's claim because defense counsel's decision not to call Movant to testify at the suppression hearing was a matter of trial strategy, and, given the weight of the evidence, there is no reasonable probability the outcome of the trial would have been different. Finding no error, we affirm.

(Resp. Ex. H, ECF No. 14-8 at 3-9) (footnotes omitted).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  Strickland, 466 U.S. at 686.  The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland.  To establish ineffective assistance, a petitioner must show (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88.  Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable."  See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard."  Harrington, 562 U.S. at 101.  Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id. at 105.  "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690).  "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal

court then must review counsel's performance under the 'deferential lens of § 2254(d).'"   Id.
(quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

On post-conviction appeal, the Missouri Court of Appeals applied the equivalent of the
Strickland standard and concluded the trial court did not clearly err in finding trial counsel was not
ineffective for failing to call Petitioner to testify at the suppression hearing.  The court found that
trial counsel investigated Petitioner's claims of threats and promises and found no support for
them, and concluded it was a matter of trial strategy not to call Petitioner to testify because counsel
did not want the State to know the content of Petitioner's testimony prior to trial and did not want
him to make a statement that could be contradicted during trial.  See Johnson v. Norris, 537 F.3d
840, 847-48 (8th Cir. 2008) (holding it was reasonable trial strategy not to call a defendant to
testify at a suppression hearing unless he can "really help himself," because there is a risk the
defendant's testimony can "'open the door' to potentially damaging evidence" and the defendant
"puts himself subject to cross-examination by the prosecutor.").

The court also found Petitioner could not show prejudice because of the weight of the
evidence:  In addition to confessing to police, he confessed to the Missouri robberies in recorded
jail calls to his family members which were admitted into evidence at trial; he was positively
identified by an eyewitness; and there was evidence his DNA profile matched that found on the
ski mask he was wearing during one of the robberies.  Thus, the court concluded there was no
reasonable probability the outcome of the trial would have been different if Petitioner had testified
at the suppression hearing

The Court determines that the Missouri Court of Appeals' application of the Strickland
standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons

stated by that court.  See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101.  Ground Three will be denied.

**Conclusion**

For the foregoing reasons, the Court concludes that Petitioner Darrell I. Bolden was unconstitutionally denied a Faretta hearing following his unequivocal requests to represent himself, and the state court's decision was an unreasonable application of the Sixth Amendment. As a result, Bolden is entitled to a judgment of habeas corpus relief on Ground One vacating his state court judgment and sentence.  Respondent will be ordered to provide Petitioner a Faretta hearing and new trial, and to release Petitioner if the State of Missouri does not commence proceedings to afford Petitioner a Faretta hearing and new trial within one hundred eighty (180) days after this Order becomes final (including any appeals that may be taken).  The Court finds that all other claims for relief in Bolden's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody are either procedurally barred or fail on the merits and must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that David Vandergriff's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

**IT IS FURTHER ORDERED** that Petitioner Darrell I. Bolden's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **GRANTED in part** and **DENIED in part**.  The Petition is **GRANTED** on Petitioner's claim in Ground One that he was improperly denied a Faretta hearing and the right to represent himself at trial.  The Petition is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the Judgment and Sentence in State of Missouri v. Darrell Bolden, No. 13SL-CR02123-01 (21st Jud. Cir., State of Missouri) is **VACATED**.

**IT IS FURTHER ORDERED** that within one hundred eighty (180) days after this Order becomes final (including any appeals that may be taken), the State of Missouri must conduct a Faretta hearing and commence a new trial; if the State does not do so within one hundred eighty days, Respondent must release Petitioner from custody.

**IT IS FURTHER ORDERED** that as to all other claims in the Petition under 28 U.S.C. § 2254, Petitioner has not made a substantial showing of a denial of a constitutional right or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.


*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this 22nd day of February, 2022.